UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    vs.<br><br>COVIL CORPORATION By Its Duly Appointed Receiver, Peter D. Protopapas,<br><br>        Defendant. | Civil Action No. 6:20-1729-BHH<br><br>**OPINION AND ORDER** |

This matter is before the Court on Defendant Covil Corporation's ("Covil") motion to dismiss or stay (ECF No. 11). For the reasons set forth in this Order, the motion to dismiss is granted.

## BACKGROUND

Covil was an installer of thermal insulation materials from 1954 through 1991. Covil's operations allegedly exposed numerous persons to asbestos who thereby suffered bodily injury. The alleged bodily injury has given rise to dozens of claims and tort suits against Covil ("Underlying Asbestos Suits"), in which asbestos claimants seek to recover from Covil for their bodily injuries.

Covil filed a declaratory judgment action in the Court of Common Pleas, Fifth Judicial Circuit, County of Richland, South Carolina ("State Court Action") alleging that during a relevant portion of its operations, Sam J. Crain & Co., Inc. ("Crain Agency") served as Covil's insurance broker. (State Court Action Compl., ECF No. 11-3.) In that case, Covil contends that based on the Crain Agency's advice about Covil's business

1

insurance needs, from 1986 to 1988, it purchased insurance from Pennsylvania National Mutual Casualty Insurance Company ("Penn National"). Covil further contends that Mission Insurance Company ("Mission") issued umbrella coverage to Covil from at least 1986 to 1987 (the "Mission policy"). Covil has experienced losses related to the Underlying Asbestos Suits that it asserts trigger coverage under the Mission policy, which purportedly has a liability limit of $5,000,000. (*Id.* ¶ 10.) Mission was liquidated on September 12, 1987, and the Mission policy is missing. (*Id.* ¶¶ 10–11.) Covil alleges that the South Carolina Property and Casualty Insurance Guaranty Association ("Guaranty Association"), which was statutorily created to protect the policyholders of insolvent insurance companies, steps into the shoes of Mission to the extent of its obligation on covered claims arising from the Underlying Asbestos Suits. (*See id.* ¶ 12.)

The Honorable Jean H. Toal (Chief Justice Ret.) ("Justice Toal") is presiding over many of the Underlying Asbestos Suits in a consolidated asbestos docket in South Carolina state court ("Receivership Court"). Justice Toal appointed Peter D. Protopapas, pursuant to South Carolina Code § 15-65-10, as Receiver for Covil ("Receiver") on November 2, 2018. The order of appointment vested the Receiver with the power and authority to fully administer all assets of Covil, including the right and obligation to administer any insurance assets. The Receiver is acting on behalf of Covil, managing the defense of the Underlying Asbestos Suits as well as numerous declaratory judgment actions related to Covil's historical insurance coverage.

On May 22, 2020, Penn National removed the State Court Action to federal court alleging diversity jurisdiction under 28 U.S.C. § 1332, notwithstanding the presence of its co-defendants—the Crain Agency and the Guarantee Association ("non-diverse

2

defendants")—which shared South Carolina citizenship with Covil. *See Covil Corp. v. Penn. Nat'l Mut. Cas. Ins. Co., et al.*, No. 3:20-cv-1979-BHH (D.S.C.), ECF No. 1. Penn National asserted that the citizenship of the non-diverse defendants should be ignored under the doctrines of fraudulent and nominal joinder. Penn National also filed a motion in the alternative to realign the non-diverse defendants as plaintiffs, thereby creating complete diversity. *Id.*, ECF No. 5. Covil filed a motion to remand, asserting that the non-diverse defendants were properly joined and properly aligned as defendants. *Id.*, ECF No. 21. On March 30, 2021, the undersigned denied Penn National's request to disregard the citizenship of the non-diverse defendants, denied the motion in the alternative to realign the non-diverse defendants as plaintiffs, and granted Covil's motion to remand. *Id.*, ECF No. 34.

Penn National filed the instant declaratory judgment action four days after Covil filed the State Court Action, seeking resolution of insurance coverage issues that were already pending in the State Court Action. (*See* Brief in Opp. to Mot. to Dismiss or Stay, ECF No. 14 at 10–11 (itemizing duplicative coverage issues).) Covil filed a motion to dismiss or stay this action, requesting that this Court decline to exercise jurisdiction and allow the first-filed, more comprehensive State Court Action to proceed. (*See* ECF No. 11-1 at 2.) Covil expressly stated that the relief requested in the motion to dismiss or stay was premised on the Court's resolution of the State Court Action in favor of remand (*id.*), which has now occurred. These matters are ripe for disposition and the Court now issues the following ruling.

## **LEGAL STANDARD**

"[D]istrict courts possess discretion in determining whether and when to entertain

3

an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). "It is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998). Declaratory judgment actions to ascertain liability coverage typically involve a separate proceeding, often in state court, by a tort plaintiff against the insured defendant. Federal courts have not held that such declaratory judgment actions inherently create undue entanglement with the underlying state tort actions. "Such a rule would . . . be flatly inconsistent with controlling Supreme Court precedent approving the use of declaratory judgment actions by insurers in precisely that situation." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994). Moreover, "a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). Rather, the Court considers four factors ("*Nautilus* factors") in deciding whether to exercise its discretionary jurisdiction or to abstain:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending;[] (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law"[; and (iv)] whether the declaratory judgment action is being used merely as a device for "procedural fencing"— that is, "to provide another forum in a race for res judicata" or "to achiev[e] a federal hearing in a case otherwise not removable."

*Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) (quoting *Nautilus*, 15 F.3d at 377) (modification in original). "The critical question . . . is whether–on the facts of

4

this case–the additional considerations of federalism, efficiency, and comity . . . are sufficiently compelling to justify a refusal to exercise jurisdiction, despite the obvious utility of the declaratory relief sought." *Nautilus*, 15 F.3d at 377.

## **DISCUSSION**

Covil asserts that the Court should decline to exercise jurisdiction over this declaratory judgment action because South Carolina has a strong interest in having its courts decide the issues at hand, a South Carolina state court can resolve the issues more efficiently, permitting this action to proceed will result in unnecessary entanglement between this Court and the state court adjudicating the State Court Action, and this action constitutes a procedural fencing maneuver by Penn National. The Court agrees and finds that the *Nautilus* factors weigh in favor of abstention. Accordingly, the action will be dismissed.

First, South Carolina has a strong interest in having its courts decide the issues raised by this action. Rulings on the declaratory judgment claims raised by Covil in the State Court Action, and rehashed by Penn National here, invoke unsettled principles of South Carolina insurance law that will affect plaintiffs, defendants, and insurers in a multitude of asbestos cases because the interpretation of the relevant policy provisions will repeatedly arise in South Carolina asbestos cases. *See Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006) (stating district courts may decline jurisdiction where there is a question of state law that is "unsettled"). Specifically, the court that decides these claims will need to address the following issues in the unique context of asbestos cases, where the alleged bodily injury often does not manifest until decades after exposure: aggregate limits of liability for bodily injury damage, proper application of the

5

"completed operations hazard," the application of multiple "per occurrence" limits of liability, and the allocation of loss among numerous insurers where the precise genesis of the bodily injury may be uncertain. South Carolina courts have a strong interest in resolving these matters for the sake of efficient, consistent, and complete adjudication of asbestos-related South Carolina insurance law.

Second, the Court finds that South Carolina courts can resolve the primary insurance claims raised by Penn National more efficiently. In *Great American Insurance Company v. Gross*, the Fourth Circuit explained the application of the second *Nautilus* factor as follows:

> In evaluating these efficiency concerns, the Supreme Court has directed us to focus primarily on "whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding[s]" that are already "pending in the state court[s]." *Brillhart*, 316 U.S. at 495, 62 S. Ct. 1173. This in turn requires careful inquiry into "the scope of the pending state court proceeding[s]," including such matters as "whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding."

468 F.3d at 211–12 (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)) (alterations in original). The *same* declaratory judgment claims at issue here, involving the *same* parties, are now pending before Justice Toal in the Receivership Court after the Court's remand of the State Court Action. Moreover, the Court has already remanded to the Receivership Court two other actions involving related coverage issues pertaining to Covil and its insurers. *See Finch v. Sentry Cas. Co. et al.*, No. 3:19-cv-1827-BHH (D.S.C.), ECF No. 55; *Protopapas v. Wall Templeton & Haldrup PA, et al.*, No. 3:19-cv-01635-BHH (D.S.C.), ECF No. 63. Justice Toal has already begun her analysis of the

6

policy provisions at issue and how they apply to asbestos litigation against Covil. Thus, there is little reason for this Court to devote its time and resources to adjudicating issues that will be satisfactorily adjudicated in the State Court Action. *See Wilton*, 515 U.S. at 288 ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.").

Third, the Court's retention of jurisdiction over this matter would result in unnecessary entanglement with the state courts. "Entanglement is likely when many of the issues in the declaratory action are also being litigated by the same parties in the related state court action." *Fenwick Commons Homeowners Ass'n, Inc. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, No. 2:19-CV-00057-DCN, 2019 WL 1760150, at *4 (D.S.C. Apr. 22, 2019). As already noted, the *same* issues, litigated by the *same* parties, are pending in the Receivership Court. This scenario presents the paradigmatic unwanted potential of a race to *res judicata* and of conflicting decisions. *See Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992) ("For the federal court to charge headlong into the middle of a controversy already the subject of state court litigation risks '[g]ratuitous interference with the orderly and comprehensive disposition of [the] state court litigation.'" (quoting *Brillhart*, 316 U.S. at 495) (alterations in original)); *see also Alfa Laval, Inc. v. Travelers Cas. & Sur. Co.*, No. 3:09-CV-733-HEH, 2010 WL 2293195, at *4 (E.D. Va. June 3, 2010) (staying case where issues in lawsuit in a different State "closely parallel those in the immediate case" because "[t]he potential exi[s]ts for conflicting decisions with respect to not only scope of coverage and indemnity liability under the [insurer's] policy, but also the percentage of allocated obligation on the part of the other insurance carriers, individually

and collectively"). The potential conflicts here include questions concerning the extent to which Penn National is obligated to defend and indemnify Covil against asbestos suits under the policies at issue. This potential for conflicting decisions weighs in favor of the Court declining to exercise jurisdiction.

Fourth, the Court finds that this action appears to constitute procedural fencing by Penn National. "Procedural fencing" occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Great Am. Ins. Co.*, 468 F.3d at 212. Penn National attempted to remove the first-filed State Court Action and within days filed this federal action, which is duplicative as to the coverage dispute between Covil and Penn National. The purpose of this action appears to be to facilitate Penn National's avoidance of a South Carolina court that has previously considered similar questions and reached conclusions that, if applied to this case, would be unfavorable to Penn National. (*See* Receivership Court Order for Rule to Show Cause, ECF No. 11-5 (addressing trigger of coverage, the distinction between "operations" and "completed operations," insurers' burden of proof, "per occurrence" limits of liability, and allocation of losses under Covil's insurance policies).) Thus, the fourth *Nautilus* factor also weighs in favor of abstention

Because the Court finds it advisable to abstain from exercising jurisdiction over this case under the *Nautilus* factors, analysis of the *Colorado River* abstention doctrine raised by Covil would be extraneous. Accordingly, the Court declines to address that second basis for abstention asserted by Covil.

## **CONCLUSION**

For the reasons stated above, Defendant Covil Corporation's motion to dismiss

8

(ECF No. 11) is GRANTED and this action is dismissed with prejudice.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

March 31, 2021
Greenville, South Carolina